**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

Data PowerWorks, LLC,

Plaintiff,

v.

Schneider Electric SE and Schneider Electric USA, Inc.,

Defendants.

Case No. 2:25-cv-300-JRG

JURY TRIAL DEMAND

[redacted]

**SCHNEIDER'S MOTION TO STRIKE DATA POWERWORKS'S SUPPLEMENTAL INFRINGEMENT CONTENTIONS**

# TABLE OF CONTENTS

**I. Background** ..................................................... **2**

**II. Argument** ..................................................... **5**

A. The Court's Preliminary Claim Constructions Are Not a "Claim Construction Ruling" Under P.R. 3-6(a)(1). ..................................................... 6

B. The Court's Preliminary Constructions Were Not "Unexpected or Unforeseeable" ..................................................... 8

C. DPW's Untimely Supplement Severely Prejudices Schneider. ..................................................... 12

**III. Conclusion** ..................................................... **15**

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ACQIS LLC v. Appro Int'l, Inc.*,
2011 WL 13137344 (E.D. Tex. Jan. 20, 2011)....8

*Allergan Sales LLC v. Teva Pharma. USA, Inc.*
2017 WL 2968588 (E.D. Tex. July 12, 2017)....7

*Headwater Research LLC v. Samsung Elecs. Co.*,
2024 WL 1840414 (E.D. Tex. Apr. 25, 2024) (Gilstrap, J.)....12

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
2018 WL 11182156 (E.D. Tex. Jul. 2, 2018)....8, 10, 11

*Intel Corp. v. Commonwealth Science and Industrial Research Organisation*,
2009 WL 10676780 (E.D. Tex. Apr. 9, 2009)....10, 11

*Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
2008 WL 11344914 (E.D. Tex. Aug. 7, 2008)....8

*Kemco Sales, Inc. v. Control Papers Co., Inc.*,
208 F.3d 1352 (Fed. Cir. 2000)....13

*Nike, Inc. v. Adidas America Inc.*,
479 F. Supp. 2d 664 (E.D. Tex. Mar. 21, 2007)....9, 10, 12

*Patent Harbor, LLC v. Audiovox Corp.*,
2012 WL 12840341 (E.D. Tex. March 30, 2012)....10

*Phenix Longhorn LLC v. AU Optronics Corp.*,
2026 WL 118036 (E.D. Tex. Jan. 2, 2026) (Payne, J.)....13

*Sycamore IP Holdings LLC v. AT&T Corp.*,
2018 WL 1695231 (E.D. Tex. Apr. 6, 2018)....8

**Statutes**

35 U.S.C. § 112(f)....2

**Rules**

E.D. Tex. P.R. 3-6(a)(1)....5, 6

E.D. Tex. P.R. 3-6(b)....6

[redacted]

Defendants Schneider Electric SE and Schneider Electric USA, Inc. ("Schneider") respectfully move to strike Plaintiff Data PowerWorks, LLC's ("DPW") improper and belated supplemental infringement contentions.

One minute prior to the close of fact discovery, DPW served supplemental infringement contentions claim charts introducing extensive new infringement theories for the asserted claims of the '288 and '613 patents. In particular, DPW injected new theories, evidence, and argument for two disputed claim terms of each patent: "control module" in claim 1 of the '613 patent and "control module configured to…" in claim 1 of the '288 patent. DPW's new claim charts—comprising nearly 400 pages of new content—also inject new doctrine of equivalents theories for these limitations. On August 3, 2026, DPW then served its opening infringement report that contains dozens of pages of opinions that expand on DPW's belated theories and evidence.

DPW's supplemental contentions are improper, highly prejudicial to Schneider, and should be stricken. Schneider has had no opportunity to test DPW's last minute theories or develop its defenses to them during fact discovery. DPW claims that P.R. 3-6(a)(1) authorizes its supplement, but DPW is wrong. P.R. 3-6(a)(1) only permits DPW to amend infringement contentions where there is a "claim construction ruling" that is "unexpected or unforeseeable" by the Court. That is not the case here: the Court has yet to issue a claim construction order, and there was no "unexpected or unforeseeable" construction of either claim term. Rather, the Court issued preliminary constructions at the July 8, 2026 *Markman* hearing that tentatively adopt Schneider's proposed constructions for the "control module" terms or a slight variation thereof.

DPW was on notice of Schneider's proposed constructions for more than ***four months*** prior to serving its belated supplement, but never requested or received leave from the Court to supplement. The law is clear that DPW cannot use Rule 3-6(a)(1) to belatedly fix its

[redacted]

infringement case at this late stage. Accordingly, the Court should strike DPW's supplemental infringement contentions.

## I. BACKGROUND

DPW filed suit on March 13, 2025, alleging that Schneider's uninterruptible power supply ("UPS") products infringe four patents, including U.S. Patent Nos. 9,000,613 (the "'613 patent") and 9,531,288 (the "'288 patent"). Dkt. 1. DPW served infringement contentions on Schneider on July 2, 2025 for all asserted patents, including four claim charts.

Starting in February 2026, the parties engaged in the claim construction process during which constructions of the "control module" terms in the '613 and '288 patents were disputed. On February 10, 2026, Schneider served its P.R. 4-1 Proposed Terms and Claim Elements for Construction, which identified both "control module" terms for construction. Ex. 1 at 4. On March 10, 2026, the parties exchanged proposed claim constructions pursuant to Local Patent Rule 4-2. DPW proposed that all disputed claim terms should be construed according to their plain and ordinary meaning, while Schneider proposed that both terms were subject to 35 U.S.C. § 112(f) and should be limited to particular functions and structures. Ex. 2 at 25, 31–32. In particular, Schneider proposed "UPS control module 18" as the proposed structure for the '613 patent term, and "UPS control module 38" for the '288 patent term. *Id.*

On March 31, 2026, the parties submitted their Rule 4-3 Joint Claim Construction and Pre-Hearing Statement to the Court. Dkt. 48. Schneider maintained both its constructions. *See* Dkt. 48-1 at 13–14, 19–20. DPW again proposed the "control module" terms should be construed according to their plain and ordinary meaning, but also identified an alternative structure in the event the Court agreed with Schneider that § 112(f) applied. *Id.* ("Any one of an ASIC, [an electronic circuit / a discrete circuit, an integrated circuit], a combinational logic circuit, an FPGA, a processor (shared, dedicated, or group) that executes code, memory that

[redacted]

stores code executed by the processor, other suitable hardware components, or a combination thereof, such as in a system-on-chip, programmed or configured to perform the recited control functions; and equivalents thereof.").

The parties completed claim construction briefing between May 5–26, 2026. *See* Dkts. 56, 58, 61. Although DPW had previously proposed alternative structures for the "control module" terms, DPW abandoned those proposals and focused its briefing exclusively on disputing the threshold question of whether § 112(f) applied. *See* Dkt. 56 at 8–11, 16–18; Dkt. 61 at 4–7. Schneider continued to argue § 112(f) applied and proposed functions and structures based on the patents' specifications. *See* Dkt. 58 at 16–19. DPW did not substantively respond to or dispute Schneider's arguments regarding the function or structure in its briefing.

The Court held a *Markman* hearing on July 8, 2026. Dkt. 87. Prior to the hearing, the Court provided the parties with preliminary claim constructions for the disputed claim terms. Ex. 3. The Court preliminarily found in Schneider's favor on the "control module" terms: the Court agreed with Schneider that § 112(f) applied, and either adopted Schneider's proposed structure or a slight variation thereof, such as including figures in the construction. *Id.* At the outset of the *Markman* hearing, the Court explained the purpose of the preliminary constructions:

> …the intent is to let counsel know where the Court is after the initial review of the briefing and the record so that counsel can focus their arguments where they think the Court has most missed the mark. I do reserve the right to alter these preliminary constructions and not uncommonly do change them based on the arguments received at this hearing. So I hope that they will be taken in that spirit.

Ex. 4 at 3:21–4:11.

During two meet and confers prior to and during the hearing, DPW confirmed that it would not dispute the Court's preliminary determination that § 112(f) applied to the "control module" terms. Ex. 3. At the Court's request, the following day the parties filed a joint notice in which DPW largely agreed with the Court's and Schneider's proposals regarding the

[redacted]

corresponding structures for each term. *See* Dkt. 89. The parties identified only one narrow remaining dispute over "whether the additional description of Fig. 15 at 12:31-12:41 should be construed as part of the structure" for the '288 patent's "control module" term. Dkt. 89 at 1. As of this filing, the Court has not yet issued a formal claim construction order. DPW did not propose amending its infringement contentions during these meet-and-confers or at any point during the claim construction process between February and July 2026.

Fact discovery closed on July 20, 2026. At 11:59 PM CST on July 20, DPW served supplemental infringement contentions charts for the '613 and '288 patents. DPW never requested or received leave for this belated supplement. The parties did not agree to a contentions supplement, despite meeting at the courthouse earlier that day and reaching agreements on an amended schedule, claim narrowing, and additional discovery. *See* Dkts. 104, 107, 108, 109. DPW's newly served and belated supplemental charts added nearly 400 pages of new infringement theories and evidence for the "control module" limitations of the '613 and '288 patents. *See* Exs. 5–6. DPW also added new doctrine of equivalents theories:

> Any difference between the '288 Patent Accused Products and the corresponding structures are ***insubstantial***, and the '288 Patent Accused Products perform ***substantially the same function*** of (i) detecting a variable voltage at the output of the UPS a first plurality of times to provide a first plurality of voltages, (ii) Integrating the first plurality of voltages to generate a first sum, and (iii) subsequent to completing a transition from the second mode to the first mode, adjusting an output voltage of the inverter based on the first sum to balance the variable voltage of the UPS, wherein the variable voltage of the UPS is provided based on the output voltage of the inverter, ***in substantially the same way, to achieve substantially the same result***. For example, at a minimum, the '288 Patent Accused Products are ***insubstantially different from the claimed functionality*** and ***perform substantially the same function*** (e.g., detecting and correcting an imbalance caused by the transition or DC offset in the UPS output voltage), ***in substantially the same ways*** (e.g., by evaluating the UPS output voltage over time), ***to achieve substantially the same result*** (e.g., correct any imbalance caused by the transition or DC offset in the UPS output voltage).

[redacted]

Ex. 6 at 34; Ex. 5 at 35 (similar for '613 Patent) (emphasis added).[1]

The following day, Schneider objected to DPW's supplemental claim charts. Ex. 7 at 3. In the parties' correspondence, DPW asserted that its supplement was appropriate under P.R. 3-6(a)(1) because it "in good faith" sought to "address the tentative construction" and the Court's preliminary constructions "differed" from what either party proposed. *Id.* at 2. DPW further claimed its supplement was "completely proper and appropriate" because the Court's preliminary constructions were "significantly different from the structures either party proposed during claim construction briefing," despite the Court adopting Schneider's positions. *Id.* at 1. Further, DPW claimed it did not "include any new DOE theories," but rather "disclosures of structural equivalence under § 112(6)." *Id.* During the parties' meet and confer, DPW again represented it was not adding new doctrine of equivalents theories. DPW also refused to withdraw its supplement and confirmed the parties were at an impasse.

On August 3, 2026, DPW served its infringement expert report from Dr. Randy Collins. In his report, Dr. Collins purports to expand on DPW's belated "control module" theories with extensive analysis regarding whether the accused products have the claimed or equivalent structures. Ex. 8 ¶¶ 122–158 ('613 patent); *id.*, ¶¶ 379–459 ('288 patent). Dr. Collins further opines that Schneider's products infringe the "control module" term of the '288 patent under the doctrine of equivalents. *Id.*, ¶ 459

## II. ARGUMENT

P.R. 3-6(a)(1) permits a plaintiff to supplement infringement contentions only where there is a "claim construction ruling" that it believes in good faith was "unexpected or

[1] Given the length of DPW's supplemental charts, Schneider has submitted exemplary excerpts for purposes of this motion. Schneider is prepared to submit additional portions or the full charts at the Court's request.

[redacted]

unforeseeable." Neither requirement is met here. The Court has not yet issued any order construing the disputed claims terms and issued only preliminary constructions. To the extent the preliminary constructions are sufficient for P.R. 3-6(a)(1) to apply, the Court's preliminary constructions were certainly expected and foreseeable—the Court agreed with Schneider's proposals. The Court should strike DPW's belated supplemental contentions that inject numerous new infringement theories and disputes into the case at this late stage, which Schneider was unable to test during fact discovery.

### A. The Court's Preliminary Claim Constructions Are Not a "Claim Construction Ruling" Under P.R. 3-6(a)(1).

At the outset, DPW's attempt to invoke P.R. 3-6(a)(1) fails because there has been no "claim construction ruling." The Court has issued only preliminary claim constructions.

Unless "expressly permitted in P.R. 3-6(a)," DPW was required to obtain leave (by order of the Court upon a showing of good cause) to amend its infringement contentions. P.R. 3-6(b). Under P.R. 3-6(a)(1), each party's infringement and invalidity contentions "shall be deemed to be that party's final contentions" and a party may amend those contentions only where that party "believes in good faith that the Court's ***Claim Construction Ruling*** so requires." P.R. 3-6(a)(1) (emphasis added). Absent that circumstance, "[a]mendment or supplementation of any Infringement Contentions or Invalidity Contentions … may be made only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b).

The Court's July 8, 2026 preliminary constructions are not a "claim construction ruling." The constructions are "preliminary," subject to change, and the Court has yet to issue a formal order. As the Court made clear at the *Markman* hearing, the purpose of the preliminary constructions was to facilitate the hearing. Magistrate Judge Payne explained that he reserved the right "to alter these preliminary constructions," which "not uncommonly do change," and

[redacted]

hoped "that they will be taken in that spirit." Ex. 4 at 3:21–4:11. The parties have yet to brief any objections to an order, and the Court has not yet considered or ruled on any such objections. Indeed, Magistrate Judge Payne requested and is still considering a post-hearing submission regarding disputed additional structure for the '288 patent term. Dkt. 89.

In the parties' correspondence on this dispute, DPW cited *Allergan Sales LLC v. Teva Pharma. USA, Inc.* as support for the notion that preliminary constructions suffice. Ex. 7 (citing 2017 WL 2968588, at *8 (E.D. Tex. July 12, 2017)).[2] DPW is wrong, and that holding only confirms that its supplement is improper. In *Allergan Sales*, the Court issued its claim construction order and, in doing so, stated that the preliminary constructions in that case were "considered 'the Court's Claim Construction Ruling' under Local Patent Rule 3-6(a)(1)-(2) ***for purposes of this case only***." *Allergan Sales*, 2017 WL 2968588, at *8 (emphasis added). The Court further noted that "[a]ny substantive changes to contentions or expert reports, *i.e.*, any amendments ***that do more than make minor changes*** necessary to conform the language of the preliminary constructions to the language of the constructions set forth herein, ***require leave of Court***." *Id.* (emphasis added).

Here, the Court issued only preliminary constructions, and the Court has yet to issue its *Markman* order. Thus, it is unclear what minor changes to the contentions, if any, could be appropriate. More importantly, though, DPW's supplemental charts add nearly 400 pages of new infringement theories, structural equivalents theories, doctrine of equivalents theories, and an avalanche of new evidence. This far exceeds the limited supplement *Allergan* contemplates.

Accordingly, DPW's supplemental contentions should be stricken because there was no "claim construction ruling" and under DPW's own precedent are improper and prejudicial to

---

[2] In the correspondence, DPW cited a different case but the holding on which it relies is from *Allergan Sales*. Ex. 7.

[redacted]

Schneider. The preliminary constructions were also foreseeable and expected because the Court agreed with Schneider's positions, as further discussed below.

### B. The Court's Preliminary Constructions Were Not "Unexpected or Unforeseeable"

Were the Court to consider the July 8, 2026 preliminary constructions a "ruling" under P.R. 3-6(a)(1), DPW's supplement should be stricken because the preliminary constructions were not "unexpected or unforeseeable." The Court preliminarily agreed with and adopted Schneider's proposed constructions or a slight variation thereof for both "control module" terms.

Under P.R. 3-6(a)(1), DPW was required to have a "good faith" belief that an amendment to its contentions was appropriate in light of an "unexpected or unforeseeable" claim construction ruling from the Court. *Implicit, LLC v. Huawei Techs. USA, Inc.*, 2018 WL 11182156, at *4–6 (E.D. Tex. Jul. 2, 2018). Whether the Court's preliminary constructions were foreseeable is "determined from the time of the claim construction briefing, rather than from the time the original infringement contentions are served." *Sycamore IP Holdings LLC v. AT&T Corp.*, 2018 WL 1695231, at *7 (E.D. Tex. Apr. 6, 2018).

Courts in this District have repeatedly held that the adoption of a party's proposed construction is not an "unexpected or unforeseeable" ruling sufficient to support an amendment under P.R. 3-6(a)(1). *Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 2008 WL 11344914, at *1–2 (E.D. Tex. Aug. 7, 2008). The "adoption of an opposing party's claim construction is not sufficient to support the movant's claim that it was surprised by the court's ruling." *Implicit*, 2018 WL 11182156, at *4–6 (citing *Sycamore IP*, 2018 WL 1695231, at *6–7); *see also ACQIS LLC v. Appro Int'l, Inc.*, 2011 WL 13137344, at *2 (E.D. Tex. Jan. 20, 2011) ("A party cannot argue that merely because its proposed claim construction is not adopted by the Court, it is surprised"). Allowing an amendment without a "surprise"

[redacted]

construction "would destroy the effectiveness of the local rules in balancing the discovery rights and responsibilities of the parties." *Nike, Inc. v. Adidas America Inc.*, 479 F. Supp. 2d 664, 667–68 (E.D. Tex. Mar. 21, 2007).

DPW's supplemental contentions are improper because the Court preliminarily adopted foreseeable and expected constructions for both "control module" terms: the constructions proposed by Schneider. As to the '288 patent term, Magistrate Judge Payne preliminarily agreed with Schneider that it is subject to § 112(f) and rejected DPW's arguments to the contrary. Ex. 3 at 2. For the '288 patent term, the Court preliminarily adopted Schneider's proposed function (which was undisputed) and determined the corresponding structure is "UPS control module 38." *Id*. That is precisely the '288 patent "control module" construction Schneider proposed, the undisputed function proposed by the parties, and the structure Schneider argued for throughout the claim construction process.

For the '613 patent term, the Court also preliminarily agreed with Schneider that § 112(f) applies. Ex. 3 at 1. The Court preliminarily found the function varies with each claim, but the function was also undisputed. *Id*. As to corresponding structure, the Court preliminarily determined it to be "UPS control circuit 100, FIGS. 6-8." *Id*. That finding is entirely consistent with, and at best a slight variation of, Schneider's proposal of "UPS control module 18." In the '613 patent, the "control module" is responsible for operating the claimed UPS in an "adaptive voltage control mode" in which the UPS "adjusts the second alternating current voltage from a first level to a second level upon switching from the bypass mode to the UPS mode." '613 Patent, Cl. 1. UPS control circuit 100 is a structure described as interchangeable in the specification with Schneider's proposed "UPS control module 18." *See* '613 Patent, 7:8–9 ("The UPS control module 18 of FIG. 1 may include or be replaced by UPS control circuit 100."). In a

[redacted]

post-hearing submission the following day, DPW also agreed that the algorithm for "adaptive adjusting output voltage" of the UPS should be included in the construction, and further agreed with Schneider to remove Figures 7 and 8 from the construction but keep Figure 6. Dkt. 89 at 2.

Under these circumstances, the Court's preliminary constructions are more than foreseeable and expected, and DPW cannot credibly claim otherwise. *See Implicit*, 2018 WL 11182156, at *4–6; *Nike*, 479 F. Supp. 2d at 669 (rejecting amended contentions where the court "did not specifically adopt either of the parties' proposals" but also "did not wholly depart from them either"); *Patent Harbor, LLC v. Audiovox Corp.*, 2012 WL 12840341, at *3 (E.D. Tex. March 30, 2012) (similar). The parties' "control module" disputes and Schneider's proposed constructions were front and center throughout the claim construction process. DPW advocated for plain and ordinary meaning constructions, proposed alternative functions, and proposed alternative structures for both terms. In its briefing, DPW chose to forgo its proposed alternatives, focused solely on whether § 112(f) applied, and conceded that Schneider's constructions were correct if § 112(f) applied. That DPW's positions do not appear to have been successful does not trigger P.R. 3-6(a)(1).

The court's holding in *Intel Corp. v. Commonwealth Science and Industrial Research Organisation* is illustrative. 2009 WL 10676780, at *6–8 (E.D. Tex. Apr. 9, 2009). In that case, the parties disputed the corresponding structure for a means-plus-function claim limitation and whether a second term was indefinite. *Id.* at *6. Following the court's ruling on those disputes, the defendant, citing P.R. 3-6(a), sought a continuance and permission to amend its contentions and revise expert reports to address the court's constructions. *Id.* Judge Davis rejected that request, finding there was no "surprise" to the defendant given both parties extensively litigated the constructions chosen by the Court. *Id.* The court observed that "merely adopt[ing]" one

[redacted]

party's position and "incorporate[ing] it into the claim construction" was insufficient to trigger the rule, and that it was "incumbent upon the [requesting party] to recognize … that it had differing views concerning the scope of the asserted claims." *Id.* at *7. That the defendant also "discussed intrinsic evidence and claim interpretation arguments for nearly two hours" during a hearing was also "instructive" as to the lack of purported "surprise." *Id.*

The same is true here. The parties disputed and briefed the § 112(f) issues surrounding both "control module" terms over the course of several months. Dkts. 56, 58, 61. After receiving the Court's preliminary constructions, DPW met and conferred with Schneider twice during the July 8, 2026 *Markman* hearing about the "control module" structures and agreed to nearly all of Schneider's proposals. Dkt. 89. The parties then presented argument about whether the '288 patent's "comparison modules" are "properly part of" that patent's "control module" construction. Ex. 4 at 37–41. The following day, the parties submitted a joint filing crystallizing DPW's agreements at the *Markman* hearing and noting the parties' remaining narrow dispute about the "comparison modules." Dkt. 89 at 1. DPW was thus more than on notice of the "control module" disputes; losing those disputes is not a legitimate basis to invoke P.R. 3-6(a)(1). *Intel*, 2009 WL 10676780, at *6–8; *Implicit*, 2018 WL 11182156, at *4–6.

At base, DPW apparently determined after the *Markman* hearing that it neglected to disclose theories in its contentions under which the accused products allegedly infringe if Schneider's "control module" constructions were adopted. But that is too little, too late. The parties' "control module" disputes were known well before the *Markman* hearing, and thus DPW should have acted far earlier. P.R. 3-6(a)(1) does not permit DPW to sandbag Schneider with entirely new infringement theories at the eleventh hour, at the close of fact discovery, and just before the exchange of opening expert reports, much less where the Court preliminarily adopted

[redacted]

Schneider's arguments and rejected DPW's. DPW's supplemental contentions should be stricken.

**C. DPW's Untimely Supplement Severely Prejudices Schneider.**

DPW was on notice of Schneider's positions for nearly five months, but did nothing to address them until one minute before the close of fact discovery. That is improper. DPW's belated supplemental contentions add new disputes about complex technology into the case, such as whether a litany of separate functions and structural elements in five different electrical products meet the claims. Schneider had no opportunity to test or develop its defenses to those allegations during fact discovery. The Court should strike DPW's supplemental contentions.

"Amendments to infringement contentions at the close of discovery are inherently prejudicial." *Headwater Research LLC v. Samsung Elecs. Co.*, 2024 WL 1840414, at *3 (E.D. Tex. Apr. 25, 2024) (Gilstrap, J.); *see also Nike*, 479 F. Supp. 2d at 668 (recognizing "the right to amend under P.R. 3-6 is subject to the court's duty to avoid unfairly prejudicing [a party] 'through eleventh-hour alterations'" in striking DOE theories disclosed a month before fact discovery closed) (citation omitted).

DPW's supplemental contentions introduce ***numerous*** new disputes into the case that Schneider had no opportunity to address. This is not a case where the function or corresponding structure of a § 112(f) term is straightforward, or where only one or two additional elements were added. ***Dozens*** of new limitations have been added through the Court's preliminary constructions, and DPW made no attempt until one minute before the close of fact discovery to explain why it believes the accused products meet each one. For the '288 patent, the structure includes "'UPS control module 38,' as described further at 5:6-8; 8:5-9; and Fig. 15 (as described further at 11:33-12:30; and 12:42-13:21)." Dkt. 89 at 1. Should the Court agree with Schneider, 12:31–12:41 may also be included which further compounds the issue. As to the '613

[redacted]

patent, the parties agree the structure includes "'UPS control circuit 100', FIG. 6, 11:66-12:62, as necessary to perform the claimed function." Dkt. 89 at 2. The preliminary constructions thus add ***columns and figures*** worth of additional claim elements and new disputes to address.

The extent of DPW's supplement and prejudice to Schneider is made clear by DPW's supplemental charts. DPW newly argues the accused products include the "same" structures or an "equivalent." Ex. 7. DPW also alleges for the first time that the accused products meet the "control module" limitations (as preliminarily construed) under the doctrine of equivalents. *Id.* at 2. Each of these new theories invites countless new disputes to the case, such as about whether the structure is met literally or under the DOE, or if the "equivalent" includes an identical function that is achieved in substantially the same way and achieves substantially the same result. *See Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000); *Phenix Longhorn LLC v. AU Optronics Corp.*, 2026 WL 118036, at *4 (E.D. Tex. Jan. 2, 2026) (Payne, J.) ("this test encompasses both literal infringement, under Section 112, paragraph 6" and "infringement under the doctrine of equivalents, but a key difference is that to literally infringe, an equivalent 'must perform the identical function of the disclosed structure.'").

DPW's supplement also identified numerous new arguments about hardware, software, and even mathematical equations in the accused products that it newly contends satisfies the preliminary constructions. *See, e.g.*, Ex. 6 at 33 ("the '288 Patent Accused Products perform the claimed function with the same or equivalent structure… including a control module, output balancing module, timing module, voltage reference module, voltage tracking module integration module, first comparison module, second comparison module, integration reference module, [and] voltage adjustment module found in the source code."); Ex. 5 at 35 ("the '613 Patent Accused Products perform the claimed function with the same or equivalent structure … a

[redacted]

monitor control module, bypass control module, fault detection module, adaptive voltage control module, scale module, memory, voltage reference module, first/second switch modules, and rectifier/inverter control modules implemented in source code."). DPW also identified new supporting evidence, including source code and technical documents, purporting to show how those limitations are met. *See id.*

Schneider has been and is unquestionably prejudiced by DPW's eleventh-hour supplement injecting all these new theories, evidence, and disputes into the case. The parties' "control module" disputes trace back to February 2026, yet DPW waited until July 20, 2026 at 11:59 PM CT to serve its supplement. By that time, the parties had engaged in nearly a year of fact discovery, Schneider had already deposed DPW's 30(b)(6) witness, Max Ciccarelli, and DPW had already deposed Schneider's CTO and 30(b)(6) witness, Jim Simonelli, among other activities. The parties also had already conducted in-person testing of the accused products at a Schneider facility in Costa Mesa, California based on testing protocols the parties spent significant time and resources developing. Opening expert reports were due on August 3, and thus DPW's belated supplement left Schneider and its experts with little time to react and attempt to respond.

Furthermore, DPW's opening infringement report highlights the extensive new disputes that its belated supplement injects into the case at this late stage. Dr. Collins' analysis of the '288 patent's "control module" term under the preliminary construction spans numerous paragraphs alone. Ex. 8 ¶¶ 379–459. That analysis purports to address whether the accused products include the same or an "equivalent" structure, and also opines on infringement under the doctrine of equivalents. *Id.*, ¶ 459 ("In the alternative, and to the extent the accused structure is found not to be the same as or equivalent to the disclosed structure, in my opinion the Accused

[redacted]

Products satisfy this limitation under the doctrine of equivalents…"). Dr. Collins' analysis of the '613 patent's "control module" preliminary construction spans ***numerous*** paragraphs and concludes the accused products include the same or an "equivalent" structure, "performs the functions claimed," "perform the claimed function in the same way as the patent describes," and the "same result is also achieved." *Id.*, ¶ 158. In his analysis of both patents, Dr. Collins also relies on an even greater amount of technical documents, source code, witness testimony, and other evidence than what DPW disclosed in its belated supplement. Ex. 9. Despite DPW's original claims it was not introducing DOE theories with its supplemental contentions, its expert makes clear that DPW does intend to go forward on these arguments, and the belated addition of those theories is prejudicial.

Put simply, DPW's supplemental contentions drastically change the scope of the infringement disputes at far too late a stage. DPW knew months ago about Schneider's "control module" constructions and should have addressed them far earlier so Schneider could respond and investigate. DPW's choice to instead do so one minute before the close of fact discovery—without leave—is highly prejudicial and improper. DPW's supplement should be stricken.

## III. CONCLUSION

For at least these reasons, Schneider respectfully requests that the Court strike DPW's July 20, 2026 supplemental infringement contentions and any expert opinions based on the same.

Dated: August 17, 2026

Respectfully submitted,

*/s/ J. Travis Underwood*

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

[redacted]

Email: melissa@gillamsmithlaw.com

James Travis Underwood
Texas Bar No. 24102587
**GILLAM & SMITH, LLP**
7232 Crosswater Avenue
Tyler, Texas 75703
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: travis@gillamsmithlaw.com

Gregory S. Arovas (*admitted pro hac vice*)
Leslie M. Schmidt (*admitted pro hac vice*)
Peter Evangelatos (*admitted pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: leslie.schmidt@kirkland.com
Email: peter.evangelatos@kirkland.com

Sean McEldowney (*admitted pro hac vice*)
Michael A. Pearson, Jr. (*admitted pro hac vice*)
Matthew J. McIntee (*admitted pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: sean.mceldowney@kirkland.com
Email: mpearson@kirkland.com
Email: matt.mcintee@kirkland.com

James John Lomeo
State Bar No. 24118993
**KIRKLAND & ELLIS LLP**
401 West 4th Street, Suite 4000
Austin, TX 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
Email: james.lomeo@kirkland.com

*Attorneys for Defendants Schneider Electric SE and Schneider Electric USA, Inc.*

[redacted]

**CERTIFICATE OF CONFERENCE**

Counsel for Schneider conferred with counsel for DPW about the relief sought in this motion pursuant to Local Rule CV-7(h). On July 23, 2026 counsel for DPW informed counsel for Schneider that it opposes the relief sought in this motion.

*/s/ J. Travis Underwood*
*J. Travis Underwood*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 17, 2026.

*/s/ J. Travis Underwood*
*J. Travis Underwood*